

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

FAGAN DICKSON
FIRST ASSISTANT

August 26, 1947

Hon. Beauford H. Jester        Opinion No. V-361
Governor of Texas
Austin, Texas                  Re: Rio Grande Com-
                                   pact - Authority
                                   of Compact Com-
                                   mission to amend.

Dear Governor:

  We have your letter of June 25, 1947, in which you request our opinion on certain proposed changes in the Rio Grande Compact. The problems which arise in this connection are set out in an accompanying letter addressed to you by Hon. J. E. Quaid, Texas Commissioner on the Rio Grande Compact Commission, from which we quote as follows:

  "I respectfully take the liberty to direct your attention to Title 128 for the Revised Civil Statutes of Texas and Article 7466-1, relating to the terms of the Rio Grande Compact Commission. This is found in the Pocket Parts of the Statute. Article XIII thereof provides that at the expiration of every five years, the Commission may review any provision thereof, which is not substantive in character, and which does not affect the basic principles upon which the Compact is founded.

  "Last year the New Mexico Commissioner made a request for a review with reference to the deliveries by New Mexico to Texas. The matter was referred to the Engineering Advisors of the respective States, towit: Texas, New Mexico and Colorado. They have worked out a new schedule with reference to gaging stations and measurements. They have made a report back to the Commission, which I herewith enclose. Each state is submitting to its Attorney General, the question of whether or not, the suggested changes in the re-

port are substantive in character, and
could be made without amending the Com-
pact through the three Legislatures and
through the Federal Government. The En-
gineering Advisors state that the ob-
ligations of the respective states for
the deliveries of water are not changed
in any substantial manner.

"I am asking that this matter be
submitted to the Attorney General of
Texas and an opinion be given you as to
whether or not this change could be made
without violating the said Article XIII
of the Compact. If the legal proposition
involved is answered favorable to the Re-
port, then my next step will be to advise
with the Water Districts below the Elephant
Butte Dam, who would be affected favorably
or unfavorably by the change. Of course,
the first question is, can this change be
legally made without amending the whole
Compact?"

We have also been furnished with a report
by the Commission which describes its investigation
and the conclusions reached recommending the changes.
It is proposed to eliminate two gaging stations, name-
ly, San Acacia and San Marcial. San Marcial is pre-
sently used as the lower index station for the purpose
of computing New Mexico's obligation to deliver water.
It is proposed that a gaging station now existing be-
low Elephant Butte Reservoir be substituted as the
lower index station in place of San Marcial. Because
of this substitution, the tabulation of relationship
between the upper index station (Otowi) and the lower
index station required to determine the measure of
New Mexico's obligation to deliver water must be re-
drawn. In addition, the measure of New Mexico's ob-
ligation will, in future, be computed on the basis
of twelve month's flow, rather than the present nine
month's flow. The months presently excluded are July,
August and September. By unanimous agreement, the
Commissioners find that the changes indicated will re-
sult in substantially the same obligation and result
as now exists under present practice.

To accomplish these changes, the Commission
has proposed and recommended in its report that lines

(1) and (j) of Article II of the present compact be
deleted and that Article IV be rewritten. We deem it
necessary to set out in full Article IV as it present-
ly exists and Article IV as proposed by the Commission:

Article IV (of the present Compact):

"The obligation of New Mexico to
deliver water in the Rio Grande at San
Marcial, during each calendar year, ex-
clusive of the months of July, August,
and September, shall be that quantity set
forth in the following tabulation of re-
lationship, which corresponds to the
quantity at the upper index station:

"Discharge of Rio Grande at Otowi
Bridge and at San Marcial exclusive of
July, August and September

Quantities in thousands of acre-feet

| Otowi Index Supply (5) | San Marcial Index Supply (6) |
|---|---|
| 100 | 0 |
| 200 | 65 |
| 300 | 141 |
| 400 | 219 |
| 500 | 300 |
| 600 | 383 |
| 700 | 469 |
| 800 | 557 |
| 900 | 648 |
| 1000 | 742 |
| 1100 | 839 |
| 1200 | 939 |
| 1300 | 1042 |
| 1400 | 1148 |
| 1500 | 1257 |
| 1600 | 1370 |
| 1700 | 1489 |
| 1800 | 1608 |
| 1900 | 1730 |
| 2000 | 1856 |
| 2100 | 1985 |
| 2200 | 2117 |
| 2300 | 2252 |

"Intermediate quantities shall
be computed by proportional parts.

"(5)  The Otowi Index Supply is the
recorded flow of the Rio Grande at the
U.S.G.S. gaging station at Otowi Bridge
near San Lldefonso (formerly station
near Buckman) during the calendar year,
exclusive of the flow during the months
of July, August, and September, corrected
for the operation of reservoirs construct-
ed after 1929 in the drainage basin of
the Rio Grande between Lobatos and Otowi
Bridge.

"(6)  San Marcial Index Supply is the
recorded flow of the Rio Grande at the gag-
ing station at San Marcial during the cal-
endar year exclusive of the flow during the
months of July, August, and September.

"The application of this schedule
shall be subject to the provisions herein-
after set forth and appropriate adjustments
shall be made for (a) any change in location
of gaging stations; (b) depletion after 1929
in New Mexico at any time of the year of the
natural runoff at Otowi Bridge; (c) deple-
tion of the runoff during July, August, and
September of tributaries between Otowi Bridge
and San Marcial, by works constructed after
1937; and (d) any transmountain diversions
into the Rio Grande between Lobatos and San
Marcial.

"Concurrent records shall be kept of
the flow of the Rio Grande at San Marcial,
near San Acacia, and of the release from Ele-
phant Butte Reservoir, to the end that the
records of these three (3) stations may be
correlated."

## Article IV (as proposed):

"The obligation of New Mexico to deliver water in the Rio Grande into Elephant Butte Reservoir during each calendar year shall be measured by that quantity set forth in the following tabulation of relationship which corresponds to the quantity at the upper index station;

### DISCHARGE OF RIO GRANDE AT OTOWI BRIDGE AND ELEPHANT BUTTE EFFECTIVE SUPPLY

Quantities in thousands of acre feet

| Otowi Index Supply (5) | Elephant Butte Effective Index Supply (6) |
|---|---|
| 100 | 57 |
| 200 | 114 |
| 300 | 171 |
| 400 | 228 |
| 500 | 286 |
| 600 | 345 |
| 700 | 406 |
| 800 | 471 |
| 900 | 542 |
| 1000 | 621 |
| 1100 | 707 |
| 1200 | 800 |
| 1300 | 897 |
| 1400 | 996 |
| 1500 | 1095 |
| 1600 | 1195 |
| 1700 | 1295 |
| 1800 | 1395 |
| 1900 | 1495 |
| 2000 | 1595 |
| 2100 | 1695 |
| 2200 | 1795 |
| 2300 | 1895 |
| 2400 | 1995 |
| 2500 | 2095 |

| 2600 | 2195 |
|------|------|
| 2700 | 2295 |
| 2800 | 2395 |
| 2900 | 2495 |
| 3000 | 2595 |

Intermediate quantities shall be computed by proportional parts.

"(5) The Otowi Index Supply is the recorded flow of the Rio Grande at the U.S.G.S. gaging station at Otowi Bridge near San Lldefonso (formerly station near Buckman) during the calendar year, corrected for the operation of reservoirs constructed after 1929 in the drainage basin of the Rio Grande between Lobatos and Otowi Bridge.

"(6) Elephant Butte Effective Index Supply is the recorded flow of the Rio Grande at the gaging station below Elephant Butte Dam during the calendar year plus the net gain in storage in Elephant Butte Reservoir during the same year or minus the net loss in storage in said reservoir, as the case may be.

"The application of this schedule shall be subject to the provisions hereinafter set forth and appropriate adjustments shall be made for (a) any change in location of gaging stations; (b) depletion after 1929 in New Mexico of the natural runoff at Otowi Bridge; and (c) any trans-mountain diversions into the Rio Grande between Lobatos and Elephant Butte Reservoir."

The Compact is shown in full as Article 7466e-1, Vernon's Civil Statutes. The solution to the question presented depends upon interpretation and construction of Articles V and XIII of the Compact, which we now copy in full:

ARTICLE V -

"If at any time it should be the unanimous finding and determination of the Com-

mission that because of changed physical
conditions, or for any other reason, re-
liable records are not obtainable, or can-
not be obtained, at any of the stream gaging
stations herein referred to, such stations
may, with the unanimous approval of the Com-
mission, be abandoned, and with such ap-
proval another station, or other stations,
shall be established and new measurements
shall be substituted which, in the unanimous
opinion of the Commission, will result in
substantially the same results, so far as
the rights and obligations to deliver water
are concerned, as would have existed if such
substitution of stations and measurements
had not been so made."

ARTICLE XIII -

"At the expiration of every five-year
period after the effective date of this Com-
pact, the Commission may, by unanimous con-
sent, review any provisions hereof which are
not substantive in character and which do not
affect the basic principles upon which the
Compact is founded, and shall meet for the
consideration of such questions on the re-
quest of any member of the Commission; provi-
ded, however, that the provisions hereof shall
remain in full force and effect until changed
and amended within the intent of the Compact
by unanimous action of the Commissioners, and
until any changes in this Compact are rati-
fied by the Legislatures of the respective
States and consented to by the Congress, in
the same manner as this Compact is required to
be ratified to become effective."

In our opinion, under Article XIII of the Com-
pact, no change in the nature of an amendment affecting
the verbiage and physically changing or rewriting any of
the provisions of the Compact can be made without ratifi-
cation by the Legislatures of the three states and con-
sented to by the Congress, whether the change be substan-
tive in character or not. Article XIII clearly covers
changes in this regard which are not substantive. A sub-
stantive change would necessarily require ratification.
This prohibition relates to all provisions of the Compact,

including Articles II, IV and V. It appears from the Commission's Report that it proposes to amend the Compact by substituting new provisions to take the place of provisions as now written. The first two paragraphs of Commissioner Quaid's letter to you indicate that the Commission has proceeded in the matter of amendment under and in accordance with Article XIII. In our opinion, the Commission may not proceed under Article XIII and delete any provision of the Compact and substitute in lieu thereof a new provision unless it secures ratification as required by such article.

This does not mean that the changes which the Commission recommends and the result which it seeks to obtain by its amendment cannot be accomplished without ratification.

Article V specifically anticipates and covers the procedural changes which the Commission seeks. It permits accomplishment by the actual doing of those things the Commission seems to feel can be done only by amendment and actual change in the verbiage of the Compact. The Commission expresses concern over whether or not the changes are substantive. So long as the change is permitted by Article V, it is immaterial whether the change is substantive or not, since the substantive criteria is not a part of Article V but relates only to Article XIII. In our opinion, and so long as the Commission complies with the requirements of Article V, it can effect the result which it seeks by unanimous consent and the affirmative doing of the thing desired and to reach this result, we see no need to amend the Compact.

The distinction we have made between Articles V and XIII may seem contradictory. If there is contradiction, then we are unable to reconcile these two articles which, otherwise, would be in hopeless conflict as concerns the matter of ratification. It is stated in Article XIII that the ". . . provisions hereof shall remain in full force and effect. . . until any changes in this Compact are ratified. . ." If it is intended that "changes" shall refer to the physical aspects of the provisions of the Compact, rather than to the purposes which these same provisions intend, and this, in our opinion, is what is meant, then there is still room within which Article V can effectively operate, since Article V obviously relates to change in method, approach, or procedure within certain applicable provisions, namely, Articles II, III

and IV. If, on the other hand, changes as used in Article XIII mean every change of result or procedure within any of the Compact provisions, then it takes away what has already been clearly authorized by Article V.

Assume for the purpose of this opinion that there is hopeless conflict between these Articles. In that event, under well established rules of statutory construction, which we believe are applicable to the Compact involved here, it is our opinion that Article V being specific and relating clearly to the matters which it covers (Articles II, III and IV) would overrule and prevail over the more general purposes of Article XIII. See 39 Tex. Jur. 212, 59 C. J. 1000, 50 Am. Jur. 371. We consider the following language from 25 R. C. L., pages 1010 and 1011, applicable here:

". . . Where there is, in the same statute, a general prohibition of a thing and a special permissive recognition of the existence of the same thing under regulation, the particular specified intent on the part of the legislature overrules the general intent incompatible with the specific one. Additional words of qualification needed to harmonize a general and a prior special provision in the same statute should be added to the general provision, rather than to the special one.

". . . It has been said that, in case of conflict between the provisions of the same statute, those susceptible of but one meaning will control those susceptible of two, if the act can thereby be rendered harmonious. When one section of a statute treats specially and solely of a matter, that section prevails in reference to that matter over other sections in which only incidental reference is made thereto; not because one section has more force as a legislative enactment than another, but because the legislative mind, having been in the one section directed to the particular matter, must be presumed to have there expressed its intention thereon rather than in other sections

where its attention was turned to other
things. . . ."

In our opinion, all of the proposed changes
are within the permissive provisions of Article V. How-
ever, it has been with some difficulty that we have
reached this conclusion regarding inclusion of the July,
August and September flow in computing New Mexico's obli-
gation to deliver water. The Commission may substitute new
measurements "which, in the unanimous opinion of the Com-
mission, will result in substantially the same results. . ."
and since the Commissioners have all agreed that inclusion
of July, August and September flow in arriving at the new
measurements will produce substantially the same result as
now obtains, we accordingly have concluded that such change
is permissive under Article V.

In conclusion, you are advised that, under either
of the theories advanced above, and so long as the Com-
mission keeps within Article V, it may accomplish the re-
sult which it seeks. The Commission may not change the
physical aspects of the Compact as it seeks to do by amend-
ment without ratification.

## SUMMARY

The Rio Grande Compact Commission is
authorized by Article V of the Compact (Art-
icle 7466e-1, V. C. S. ), with the unanimous
approval of the Commission, to discontinue
certain gaging stations and substitute a new
station, or stations, new periods of flow,
and new tabulations for the purpose of measur-
ing New Mexico's obligation to deliver water
into the Rio Grande. The results achieved
through the change must be, in the unanimous
opinion of the Commission, substantially the
same as those which obtain under the Compact.
Article XIII of the Compact has no applica-

tion so long as the change is contemplated by Article V.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By            H. D. Pruett, Jr.
Assistant

HDP:bt

APPROVED

FIRST ASSISTANT ATTORNEY GENERAL